## Glasgow's Estate (No. 1).

*Wills—Construction—Legacies—Residuary bequest—Intention—Determination of legacies.*

1. A will must be considered with a thought to the conditions under which it was written.

2. Where a testator by a will executed during his last illness provided that "Whomsoever takes care of me and nurses and looks after my comfort during my last sickness or sees to it that I am properly nursed and cared for and given proper medical attention during my last sickness and a decent Christian burial after my decease," should take the residuary estate, and it appeared that at the time of the execution of the will testator had no immediate family, that he was not on cordial terms with his sister, his nearest relative, and that he knew he was ill; that claimants had rented a room to deceased for three years previous to his death, during which period one of claimants had nursed him at various times when he was ill, as well as in his last illness, until testator was taken to a hospital by advice of a physician procured by claimants; that after his death claimants arranged for his burial according to instructions given them; and that claimants answered in all particulars to the description of the residuary legatees, the Orphans' Court should have awarded the residuary estate to the claimants and not to the next of kin.

Argued Oct. 23, 1913. Appeal, No. 94, Oct. T., 1913, by Scott Thompson, from decree of O. C. Allegheny Co., May T., 1912, No. 220, sustaining exceptions to adjudi-

cation in Estate of John B. Glasgow, deceased.   Before
BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER,
JJ.   Reversed.

Exceptions to adjudication.

At the audit of the account OVER, J., filed the follow-
ing opinion:

John B. Glasgow died testate February 18, 1911, and
in his will, after giving small pecuniary legacies to some
of his kin, he provided as follows: "Fifth: The balance
of my estate I give and bequeath to my executor herein-
after named in trust to pay whomsoever takes care of
me and nurses me, and looks after my comfort during
my last illness or sees to it that I am properly nursed
and cared for and given proper medical attention during
my last sickness and a decent Christian burial after my
decease." Scott Thompson and Jeannette, his wife,
claimed the residue of the estate under this clause, and
the next of kin contend that they do not answer to the
description of the residuary legatees, and that there is
intestacy as to the residue.   Thompson and his wife,
were both called as witnesses in support of their claim,
and their testimony was received subject to the objec-
tion that they were incompetent witnesses.   If they were
claiming as creditors of the estate, the objection would
be well taken; but as they claim as legatees and by devo-
lution, they are competent witnesses and the objections
are overruled.   The decedent was a bachelor, and for
about three years prior to his death, rented a room from
the claimant, in which he lodged during the period,
taking his meals elsewhere, or cooking them in his own
room.   Prior to his last illness he was sick several times,
and Mrs. Thompson nursed him; about the 8th of Feb-
ruary, 1911, he took ill, was confined to his bed, and at
his request, Mrs. Thompson procured a physician who
attended him until his death; the physician and Mr.
Quaill, testator's attorney, advised that he be taken to
the hospital, and Mrs. Thompson made arrangements at

the Presbyterian Hospital, for his admission. He at
first refused to go, and the Thompsons on the 13th of
February, called in his attorney and a nephew, Curtis
King, to persuade him to do so, and he finally consented,
and was taken to the hospital on that day; Mr. Quaill
and Mr. King followed the ambulance to the hospital,
and Mr. Quaill arranged for the payment of his bills.
The claimants nursed and took care of him until taken
to the hospital, and Mrs. Thompson called there to see
him daily, except one day when she was ill, until his
death on the 18th of February, 1911. On the 10th of
February, 1911, Mr. Thompson notified Mr. Quaill that
the decedent was ill and wanted to see him, and that
day Mr. Quaill visited him and the will was prepared
and executed. Mrs. Thompson was notified of his death,
and in pursuance of instructions the testator had given
her husband and herself, and with the concurrence of
Mr. Quaill, executor of the will, they selected a casket,
made all the arrangements for his funeral, which was
conducted and the burial made according to the instruc-
tions given them, and as provided in his will. Had the
testator died on the 13th day of February, 1911, at the
house of the claimants, as they would have been the
only persons who nursed him and looked after his com-
fort in his last sickness, and as they also saw that he
had a decent Christian burial, there could be no ques-
tion that they answered to the description of the resid-
uary legatees. Although he did not die at their house,
and they did not nurse him during the whole period of
his last illness, yet by making arrangements for him to
be taken to the hospital they saw to it that he was prop-
erly nursed and given proper medical attention, and
they answer in all particulars to the description of the
residuary legatees. Distribution of the residue of the
estate will therefore be made to Scott Thompson and
Jeannette, his wife, as residuary legatees.

The exceptions were sustained by the court in banc in
an opinion filed by MILLER, J.

*Errors assigned* were in sustaining the exceptions.

*John A. Metz,* for appellants.

*George Alter,* of *McKee, Mitchell & Alter,* with him *Ralph P. Tannehill,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, January 19, 1914:

The testator left an estate, appraised at $5,489.54. The auditing judge, after allowing debts, expenses and pecuniary legacies to relatives awarded the net balance, amounting to $4,199.22, to the appellants; but, on the hearing of exceptions to the adjudication, the Orphans' Court declared the decedent intestate as to his residuary estate and distributed that fund among his next of kin, a sister and certain nephews and nieces; hence, this appeal.

The material facts in the case are correctly set forth in the opinion of the auditing judge published in connection herewith, except that the date when the testator "took ill" was between February 3 and 5, 1911, not "about the 8th of February," as therein stated. The opinion overruling the award to the appellants does not differ essentially from the adjudication on the underlying facts, but the majority of the court below drew different inferences and reached other conclusions than those stated by the auditing judge. The judge who heard the testimony concluded that the appellants "answer in all respects to the description of the residuary legatees" portrayed in the will; while the court in banc, after referring to some of the facts found by the auditing judge and other evidence shedding light thereon, determined that, "the evidence does not bring these claimants within the description; even if there were doubt, it must be resolved in favor of intestacy, both by reason of the indeterminate and the indeterminable beneficiaries, and the lack of convincing proof."

The opinion of the learned court below has had our careful consideration; but we feel that the auditing judge reached the right conclusion in supporting the will, and that his award to the appellants was justified by the proofs. At the time the will was executed the testator was seventy-five years of age, and knew that he was very ill; he had no immediate family, and was not on cordial terms with his sister, who was his nearest relative; he had lived with the appellants for years, and apparently looked forward to rewarding them for past kindnesses and for services he anticipated would be performed in the future, not by remuneration but by a substantial remembrance; for reasons of his own, he preferred to designate his residuary legatees by a description which expressed the motive for his gift rather than by name; in this way, should those he had in mind not continue to perform the friendly offices anticipated, his gift would fail as to them and go to others, if any, who at the end of his days might by their deeds bring themselves within the description. The testator provided that, "Whomsoever takes care of me and nurses, and looks after my comfort during my last sickness or sees to it that I am properly nursed and cared for and given proper medical attention during my last sickness and a decent Christian burial after my decease," should take his residuary estate. We cannot agree that the beneficiaries here described are "undeterminable" under the evidence at bar, or that there is a lack of "convincing proof" upon the point at issue. The will must be considered with a thought to the conditions under which it was written (Peterson's Estate, 242 Pa. 330); and when it and all the surrounding circumstances are looked at reasonably, the appellants stand out clearly as aptly fitting the testator's description of those to whom he desired the balance of his estate to go. We must assume the testator contemplated that a rational construction would be placed upon his words, and the thought expressed by the court below, that anyone could be held to

come within the descripition who in any degree contributed to the care of the decedent during his last illness or subsequently had to do with his burial, does not impress us as a fair view of the will. We feel that the learned court failed to give a reasonable construction to the language employed by the testator, and that it gave undue importance to what it conceived to be the side lights in the evidence; whereas the auditing judge interpreted the words used in a reasonable way and was properly guided by what may be termed the controlling facts shown by the proofs. Of course, the appellants in the performance of their good offices were at times obliged to act by and with others, and in so doing they called upon the decedent's executor and some of his relatives; but the testimony shows that they first actually nursed and subsequently were the moving force in the care of the testator up to the time of his death; moreover, they saw to it that he had the kind of burial that he desired. We conclude that the appellants are entitled to the fund awarded to them in the adjudication.

The assignments of error are sustained, the final decree is set aside, and the record is returned to the court below with directions to dispose of the case as here indicated; the costs to be paid out of the fund.