## Oggier Estate

Argued May 5, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Nathan M. Katz,* for appellant.

*Harry J. Schmitt,* for appellee.

OPINION BY STADTFELD, J., July 21, 1943:

This case is before the court on an appeal from the decree of the Orphans' Court of Allegheny County awarding Mrs. Anna L. Zwergel one-third of the residuary estate of Gustav Oggier, deceased. The appellant assigns as error the awarding of said decree and the dismissal of appellant's exceptions thereto. The controversy arose out of a clause in the will left by Gustav Oggier upon his death, which clause provided, inter alia, that one-third of his estate shall "be given to such person who cares for me during my last sickness." Mrs. Anna L. Zwergel and Mrs. Pauline Dotterweich, the appellant, both claim to be the residuary legatee under that clause.

Oggier, a widower about seventy-five years of age, had lived after the death of his wife at his own home, and frequently during attacks of illness at the home of his brother and sister-in-law, but never for more than a month at a time. A priest, Father Schuler, urged Oggier to reside at the home of Anna Zwergel, who was of Catholic faith. It was upon Father Schuler's urgent request that Mrs. Zwergel accepted Oggier as her boarder on February 11, 1939. She had been acquainted with Oggier for a period of twenty years prior to that time and knew he had no home. He agreed to pay her $10.00 a week for room and board, but he later asked her to reduce the amount to $8.00, assuring her that he would take care of her. Oggier came to her home a sick man, and a few days after his arrival, he suffered an attack of pneumonia. On February 21, 1939, he executed the will containing the

clause in question, which was duly probated upon his death. He continued to live with Mrs. Zwergel until Friday, January 17, 1941, a period of a little less than two years. During the time he boarded with Mrs. Zwergel, he had a serious heart ailment, and at the same time a complication which later proved to be a cancer of the stomach. He was confined to bed on several occasions in periods from one to three weeks. On several occasions, his attending physician expected an early demise. His condition became progressively worse and would inevitably end in his death. During the two years Mrs. Zwergel nursed him, giving him service equivalent to that a trained nurse would have rendered. She laundered and mended his clothes, bathed him, administered medicines, prepared special food, and carried his meals to his room. On January 17, 1941, against the advice of his doctor, he left the home of Mrs. Zwergel and went to lodge at the home of Mrs. Dotterweich, the second claimant. Five days later, on January 22, 1941, he again took to his bed. Mrs. Dotterweich rendered services to him from Thursday afternoon, January 23, 1941, until Saturday, January 25, 1941, when he was moved to a hospital upon the advice of a doctor Mrs. Dotterweich summoned. There is no evidence as to who arranged for his care at the hospital, and the assumption is that he did it himself. Mrs. Dotterweich's services consisted of giving Oggier some extra pillows, some milk, tea, and broth, and sitting in his room and ministering to him part of two nights. He died Sunday afternoon, January 26, 1941, the day following his removal to the hospital. In compliance with a promise she had made to him some time previously, Mrs. Zwergel took charge of the body and buried him from her home.

To determine the rights of the claimants to the legacy, the duration of the last illness of Oggier must first be determined. The lower court found that the certificate of death issued by the Pennsylvania Depart-

ment of Health shows the principal cause of Oggier's death to be carcinoma of the duodenum and the contributory cause arteriosclerotic heart disease. It is to be seen, then, that Oggier did not die of some new disease arising after he left the home of Mrs. Zwergel, but of the same maladies with which he was afflicted when he came to the home of Mrs. Zwergel and which necessitated the care bestowed by her upon Oggier. Similarly, in the *Estate of William Staggers, deceased,* 8 Pa. Superior Ct. 260, the decedent was for several years, prior to his death, suffering from heart disease known as mitral insufficiency, which culminated in his death. Dr. W. M. Parry treated him for this disease in 1891 and 1892 to the day of his death. The question to be decided by this court was whether the doctor's claim was service within the provision of the Act making such service rendered during the "last illness of the decedent" a preferred claim. This court decided that the auditor properly allowed the claim as a preferred one, saying (p. 264) that, "The decedent suffered from 'mitral insufficiency' which after a prolonged illness finally resulted in death. For one year and a half these services for which this claim is made were rendered for this incurable disease. While prolonged, it was certainly his last illness which resulted in death. During this period, it was impossible, in the nature of such disease, that there could be any recovery. Under this evidence, the finding by the auditor that the claim as made was for 'medicines furnished and medical attendance given' during the last illness of the decedent is justifiable and cannot be disturbed upon appeal." We can find no fault with the opinion of the lower court that the last sickness of the decedent extended from the time he entered the Zwergel home until it caused his death. Dr. Brown Fulton testified that he treated Oggier during the entire time the latter resided with Mrs. Zwergel for the ailments which eventu-

ally caused his death; that the ailments were incurable and could have only one termination; that several times during this period he expected decedent to die; that the ailments grew progressively worse and the death certificate, which was offered in evidence, showed that the cause of his death was the two diseases from which he had been suffering for years.

Having found from competent evidence that the decedent's last sickness extended at least from February 11, 1939, until he died on January 26, 1941, the question arises as to who cared for the decedent during this period. There is ample evidence to sustain the finding of the lower court that the person who cared for the decedent during his last sickness was Mrs. Zwergel. Were we to find that "last sickness" meant "in extremis," and that the last illness of Oggier commenced while he was residing at the home of Mrs. Dotterweich, as the appellant insists, then the person properly entitled to the legacy would be the nurse who cared for the decedent during his last two days of life at the hospital. In that event, even though neither the nurse nor the hospital claimed under the will and the legacy was awarded to Mrs. Zwergel, the appellant would have no interest entitling her to an appeal.

Merely because the decedent quit the home of Mrs. Zwergel to lodge with Mrs. Dotterweich does not amount to a cancellation of any bequests to the former. Changing his residence did not alter the fact that he was suffering from his last illness, and had been for two years, during which the appellee cared for him in an efficient manner. The appellee, therefore, brought herself within the provisions of the will, which was never changed or revoked. The lower court, in following these terms of the will, was required to decide which of two claimants properly fitted the designation in the will, and we can find no error in its decision that the one who rendered efficient and untiring service for a

period of twenty-three months should receive this fund, rather than the claimant who had rendered meagre service for a few days. In disregarding the slight services performed by the appellant, the lower court was in accord with the language in *Glasgow's Estate*, 243 Pa. 613, 617, 90 A. 332, "We must assume the testator contemplated that a rational construction would be placed upon his words, and the thought expressed by the court below, that anyone could be held to come within the description who in any degree contributed to the care of the decedent during his last illness or subsequently had to do with his burial, does not impress us as a fair view of the will."

Appeal dismissed and costs on appeal to be paid by appellant.