## Parnham v. Steele

*Harry H. Meizlik,* for plaintiff.
*Louis Vaira,* for defendant.

SOFFEL, J., February 25, 1955.—Albert Parnham, plaintiff, brought suit in ejectment against Thomas A. Steele, Jr., and Helen Drew Steele, defendants, to recover two acres of ground. Plaintiff is a devisee under the will of Thomas A. Steele, deceased. Defendants are children of said Thomas A. Steele and residuary legatees under his will.

These are the facts:

On December 13, 1943, Thomas A. Steele made his last will, which contains, *inter alia,* the following provision:

"Second: I give, devise and bequeath to Albert Parnham of the City of McKeesport, County of Allegheny and State of Pennsylvania, Two Acres of Ground on my farm located at Elizabeth Twp. County of Allegheny, State of Pennsylvania, or in lieu the said ground the sum of Fifteen Hundred ($1500.00) Dollars in cash."

Said Thomas A. Steele and Helen Drew Steele, his wife, conveyed to Albert Parnharm and Elizabeth L. Parnham, his wife, by deed dated July 21, 1947, as

recorded in the Recorder's Office of Allegheny County, in Deed Book vol. 2958, page 652, the following real estate:

"ALL that certain piece or tract of land situate in Elizabeth Township, County of Allegheny and State of Pennsylvania, bounded and described as follows, to-wit:

"BEGINNING at the Northeast corner of the land herein conveyed, said corner formed by the land of Kelly Estate and the Township Road; thence North 66° West, Five Hundred Eleven and 5/10 (511.5) feet along the Line of Kelly Heirs to the right-of-way of the Pittsburgh, McKessport and Connellsville Railway Company; thence South 40° 54' East, Two Hundred Ninety-four and 5/10 (294.5) feet along the Calhoun property to a white oak; thence along Calhoun line South 63° East, Seventy-five and 2/10 (75.2) feet to a pin; thence South 25° 48' West, still along Calhoun line, One Hundred Seventy (170) feet, more or less, to a point; thence South 66° East, One Hundred Eighty-five (185) feet, more or less, to a point in the aforesaid Township Road; thence along said Township Road, North 23° East, Three Hundred (300) feet, more or less, to a point at the place of beginning.

"Being part of the same property which L. D. Davis and Edna B. Davis, his wife, by their deed dated July 8, 1921, and of record in the Recorder's Office of Allegheny County, Pennsylvania, in Deed Book Volume 2071, page 269, granted and conveyed unto T. A. Steele, one of the parties of the first part hereto."

On August 7, 1948, said Thomas A. Steele died. His will was duly probated and registered in the Office of the Register of Wills of Allegheny County, in Will Book vol. 287, page 481. Plaintiff thereupon notified the personal representative of the estate that he elected to take the real estate under the second paragraph of the will.

The parties stipulated at the trial that the entire Steele farm contained 3.35 acres of land, that 1.826 acres had been conveyed to Parnham and his wife on July 21, 1947, and that 1.524 acres remained, upon which there is erected a house and barn. At the conclusion of plaintiff's case, a compulsory nonsuit was entered. The case is now before the court on plaintiff's motion to remove the nonsuit.

At the trial of this case, plaintiff sought, by the testimony of James S. Fiedler, an engineer, a Mrs. Shubert, Mr. Benjamin and Mr. Faith, to introduce evidence that would have varied, altered and contradicted the terms of the written will. The trial judge excluded said oral testimony since the will was clear and unambiguous. Was this error?

The intention of the testator is the governing factor in the interpretation of a will. In determining a testator's intention, the court should consider the entire will in the light of the surrounding and attendant circumstances at the time of its execution: In re Lifter Estate, 377 Pa. 227, 103 A. 2d 670 (1954); In re Newlin Estate, 367 Pa. 527, 80 A. 2d 819 (1951). Where the language of the testator is clear, no rules of construction are necessary to arrive at an interpretation: In re Earle Estate, 369 Pa. 52, 85 A. 2d 90 (1952). Only in the case of ambiguity in the terms of the will may the testator's intention be explained by parol testimony: In re Dowd Estate, 176 Pa. Superior Ct. 203, 107 A. 2d 387 (1954). In case of a latent ambiguity in the will, explanatory declarations made by testator at the time of its execution are admissible in evidence: Byrne's Estate, 49 York 25, appeal dismissed 121 Pa. Superior Ct. 550, 184 Atl. 303 (1935). The admission of such evidence is not to contradict the meaning of the will but only to enable the court to see things as the testator saw them: Glasgow's Estate (No. 1), 243 Pa. 613, 90 Atl. 332 (1914). In fact, it

is an established rule in Pennsylvania that even the testator's declarations to the scrivener who prepared the will are not admissible to alter or add to the terms of the will: Penrose's Estate, 317 Pa. 444, 176 Atl. 738 (1935).

We believe the oral testimony was properly excluded.

This leaves but one question for consideration, namely, whether the trial judge correctly ruled that an ademption had taken place. The question may thus be stated:

Where a testator devises to plaintiff *"Two acres of Ground* on *my farm* located at Elizabeth Twp., County of Allegheny and State of Pennsylvania or *in lieu of said ground* the sum of Fifteen Hundred ($1500.00) Dollars in cash," and where the testator in his lifetime conveys to plaintiff and wife 1.826 acres of ground and at his death has remaining of this farm 1.524 acres of land with a house and barn erected thereon, has an ademption taken place?

We desire first to point out that the testator's language must be carefully weighed. It is to be noted that he devised to Parnham specifically *"Two Acres of Ground* on my farm." We believe that the word "ground" has a definite and clear meaning, particularly since the testator in the same provision again reiterates the word, to wit, "or lieu of *said ground."* Webster, in New International Dictionary, second edition, unabridged, defines "ground" as follows:

"I. A surface of or as of earth. 1. The surface of the earth, or the earth itself considered as a basis of an abode. 2. Any definite portion of the earth's surface; region; territory; country; 3. Land; estate; 4. An extent, primarily of the earth's surface; 5. The soil; soil; earth.

"II. Bottom; foundation."

We conclude that the word "ground" was advisedly

used by the testator to mean land, not land plus buildings.

Secondly, we desire to emphasize the factual situation, to wit, that when the testator made his will in 1943 he owned a farm which consisted of 3.35 acres of land, with a house and a barn erected thereon. On July 21, 1947, Steele, the testator, conveyed to Parnham and the latter's wife 1.826 acres of land out of his farm in Elizabeth Township, Allegheny County. True, this is .174 acres less than the 2 acres of ground devised in the will. About a year later, on August 7, 1948, Steele died. His farm then consisted of *1.524 acres of land* plus *a house and a barn.* Counsel for defendants contends that an ademption had taken place by virtue of the testator's conveyance to Parnham of 1.826 acres of land a year before his death. Counsel for plaintiff argues that the doctrine of ademption by alienation operates in the instant case only *pro tanto* and that where part of the legacy has been alienated the remainder passes to the devisee under the will. Which is the correct interpretation and which doctrine shall be applied in the instant case?

This brings us to consideration of the doctrine of ademption.

The doctrine of ademption is a simple rule that a will is not effective until death, and, if the subject matter of a specific legacy does not then exist, the will cannot be effective with respect to it. "This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and *it is not founded on any presumed intention of the testator*": Hoke v. Herman, 21 Pa. 301. (Italics supplied.)

To answer the question of when a legacy is adeemed, the answer first must be sought to two other questions: What is "the thing bequeathed"? Does it exist at testator's death? If the thing bequeathed is not specific, there is no further question. Ademption cannot apply

to general or demonstrative legacies: Welch's App., 28 Pa. 363; *cf*. Smith's App., 103 Pa. 559. Whether a legacy or devise is general, specific or demonstrative depends on the intention of the testator as manifested in the will. The devise in the instant case is of "two acres of ground on my farm located at Elizabeth Twp. County of Allegheny State of Pennsylvania . . ." The Pennsylvania cases offer little help on this question.

In a California case, In re De Bernal's Estate, 165 Cal. 223, 131 Pac. 375 (1913), it was held that a devise of "five acres of that certain piece or parcel of land situate, lying and being in the city and county of San Francisco, state of California, bounded and described as follows:" (describing the tract by metes and bounds), was a *specific* devise.

A similar fact situation was involved in a Missouri case, Graham v. Karr, 331 Mo. 1157, 55 S. W. 2d 995 (1932), where a testator devised all his real estate to his wife, son and daughter, in equal shares as life tenants, and conveyed 150 acres of his 485 acres to the son prior to his death. The court held that testimony as to declarations of the testator was properly excluded and that the son shared in the remaining land under the will. The court refused to apply the doctrine of ademption to a devise of real estate but stated:

"If the devise in this case had been of specific land and afterwards the testator had conveyed the same land or part thereof, such conveyance would have operated as a revocation of the devise wholly or pro tanto, as the case might be." (331 Mo. at 1167.)

This case illustrates the confusion in the courts as to the distinction between revocation and ademption, but whatever it is called, all courts recognize the principle that extinction of the subject matter of a specific legacy or devise precludes taking under the will. And even if a devise be general, the devisee can only take

so much ground as the testator owned at his decease.

". . . the annihilation of a specific legacy, or such a change in its state as makes it another thing, annuls the bequest, for reasons paramount to considerations of intention": Blackstone v. Blackstone, 3 Watts 335, But, in making the initial decision whether a legacy is general or specific, evidence of intention is important. As to this the Blackstone case rules that "It is certainly true that the presumption of intention is favourable to general legacies in the first instance, and that it requires clear proofs of a restrictive intention to repel it. . . ."

In Blackstone v. Blackstone, supra, it appeared that, after a will was made, bank stock, the subject of a bequest, was sold or exchanged for a bond of the purchasers, with the declared intention of keeping the bond for the legatees in place of the bank stock, but the legacy was held adeemed. Gibson, C. J., stated the rule to be (at p. 337):

"It is certainly now held for clear law, that a legacy properly specific, and not merely specific in its nature by being charged on a specific fund, is adeemed, or, to speak more properly, extinguished, by any change of its state or form, effected, not by fraud or operation of law, but by the act of the testator, whatever be its purpose, which makes the corpus of the legacy, at his death, a different thing from what is indicated by the terms of the description."

In Horn's Estate, 317 Pa. 49, 52, the court speaking through Mr. Justice Linn said:

"In Slater v. Slater, (1907) 1 Ch. 665, Cozens-Hardy, M. R. put the matter as follows (at page 672): 'I feel bound myself to adopt the view taken not in one case only, but in many, that you have to ask yourself, Where is the thing which is given? If you cannot find it at the testator's death, it is no use trying to trace it unless you can trace it in this sense, that you

find something which has been changed in name and form only, but which is substantially the same thing.' In that case the bequest was of 'the interest arising from money invested (inter alia) in Lambeth Water Works Company.' Between the dates of his will and his death, the Lambeth Water Works Company was acquired by Metropolitan Water Board, pursuant to an act of Parliament, under the provisions of which Metropolitan Water Board stock was issued to testator for the Lambeth Water Works Company investment. It was held that the transaction in substance was a sale of the Lambeth Water Works Company to the Metropolitan Water Board, and that the Metropolitan stock received in compensation was not the same thing as the investment bequeathed."

In Hoke v. Herman, 21 Pa. 301, 305, Black, C. J., said:

". . . if a thing bequeathed in a will by such a description as to distinguish it from all other things be disposed of, so that it does not remain at the death of the testator, or if it be so changed that it cannot be called the same thing, the bequest is gone. If such legacy be of a debt, payment necessarily makes an end of it. The legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator. See also Harshaw v. Harshaw, 184 Pa. 401, 39 A. 89; Pruner's Est. 222 Pa. 179, 70 A. 1000; Gibson's Estate, 57 Pa. Superior Ct. 283."

Ademption involves action upon the part of the testator, the doing of some act with regard to the subject matter which interferes with the operation of the words of the will. Under this principle, as applied by the weight of authority, "If testator conveys the realty

'which he has devised, to the persons to whom he has devised it, they take title under the conveyance, and not under the will.": Page on Wills, vol. 4, p. 368, §1519, and cases cited therein. In determining whether or not an ademption takes place, it is the intention of the testator at the time of the gift or conveyance that becomes important. Thus, while parol evidence may not be admissible to show the testator's intention when making the will, it has been held to be admissible to show testator's intention in making a gift conveyance, *i.e.*, on the issue of whether or not ademption has taken place: In re Raudibaugh's Estate, 52 Dauph. 346 (1942) ; Bowman's Estate, 45 Pitts. L. J. 413 (1898). Many authorities hold that parol evidence is admissible to rebut presumptions either in favor of ademption or against ademption: Page on Wills, vol. 4, p. 400, §1539, and cases cited therein.

Although there are few Pennsylvania cases on this subject, the same general question has been considered in other jurisdictions. As stated in Page on Wills, vol. 4, pp. 416, 417, §1549:

"It is settled, by the great weight of authority, that a devise of land cannot be adeemed except by a conveyance of the same land. A conveyance of the same land operates both as an ademption by extinction, since the testator does not own the land at the time of his death, and as an ademption by satisfaction, since the devisee receives, by deed, the property which was devised to him by will. By the great weight of authority, no other form of ademption by satisfaction is recognized. A devise of specific realty is not adeemed by deed of other realty; a general devise of realty is not adeemed by a conveyance of specific realty. . . ."

It has been held in Pennsylvania that where a particularly described lot is specifically devised and is afterwards sold, the devisee takes nothing: Harshaw v. Harshaw, 184 Pa. 401, 39 Atl. 89 (1898) ; In re

Gibson's Estate, 57 Pa. Superior Ct. 283, affirming 22 Dist. R. 482 (1914). Ademption applies only to a *specific* legacy or devise: In re Horner's Estate, 60 D. & C. 532.

In Gerlach Estate, 364 Pa. 207, 72 A. 2d 271 (1950), testator gave, devised and bequeathed all his right, title and interest in his business to certain beneficiaries. His business, the Allentown Supply Company, was a partnership at the time of the execution of the will but was subsequently changed to a corporation known as the Allentown Supply Corporation. On the issue of ademption, the Supreme Court stated (pp. 210, 211):

"The bequest of testator's interest in his business was, of course, a specific one and therefore subject to ademption if the business was extinguished before his death. There seems to be some difference of opinion in the authorities as to whether weight should be given to the assumed intention of the testator in determining whether, if the subject of the specific gift has been sold or destroyed and the testator acquires another thing which possesses the same qualities as the original, such subsequently acquired property passes under his will, but *all* the authorities agree that 'If property which is specifically devised or bequeathed remains in existence, and belongs to the testator at his death, slight and immaterial changes in its form do not operate as an ademption': Page on Wills (3rd ed.), vol. 4, p. 375, sec. 1523."

No question of ademption arises if the devise in the instant case is a general devise. Whether a legacy or devise is general or specific rests almost entirely upon the intention of the testator: Walls v. Stewart, 16 Pa. 275 (1851); but a legacy is presumed to be general rather than specific: In re McGaw Estate, 85 Pa. Superior Ct. 545 (1925). However a devise of "the

balance" of real estate has been held a specific devise: In re Pitman's Estate, 182 Pa. 355, 38 A. 133 (1897).

See 69 Corpus Juris—Wills—Ademption—§2199, p. 998, et seq., for a statement of the basic principles of the doctrine of ademption.

In order to resolve the question of whether an ademption took place by virtue of the testator's conveyance in the instant case, the court must consider all the circumstances. The evidence must be clear and convincing. The courts lean against holding an ademption unless the intention is clearly shown. But where, as in the instant case, the will is clear and unambiguous and the subsequent conveyance is substantially the same as the property devised, we believe it should be held that an ademption has taken place—and not merely a pro tanto ademption. In view of the fact that the testator originally owned only 3.35 acres of ground, that he devised to plaintiff 2 acres of ground, and subsequently conveyed to plaintiff 1.826 acres, and that after said conveyance, there remained 1.524 acres of ground on which were erected a dwelling house and a barn, and that the testator clearly specified the devise was to consist of two acres of ground, we have no difficulty in concluding as a matter of law that in the instant case there has been an ademption by extinction. In the instant case the devise was specific and therefore under the authorities subject to ademption. It is not essential that the gift or payment inter vivos and the legacy be in all respects identical if they are alike in substance in order for the presumption of ademption to be applicable: 69 C. J. §2220, p. 1018. The conveyance here is ejusdem generis. While it is true that the courts have recognized the doctrine of pro tanto ademption, these cases are for the most part restricted to legacies of stocks and bonds. It does not seem logical to apply this doctrine to a devise of acre-

age where the prior conveyance substantially complies with the devise.

The motion to remove the compulsory nonsuit will therefore be refused.