574

WILL OF ZIEHLKE: RADOLL and others, Appellants, vs. HOPPE, Executor, Defendant: HERRMANN, Respondent.

*February 8—March 7, 1939.*

For the appellants there was a brief by *Wiener & Wiener,* attorneys for Alma Radoll, Martha Dettmann, and Elsie Tobin, and *Corrigan & Backus* of counsel, and by *Ronald A. Padway* for Erwin Karnowski, all of Milwaukee, and oral argument by *Mr. Walter D. Corrigan, Sr., Mr. Louis S. Wiener,* and *Mr. Padway.*

For the respondent there was a brief by *John S. Barry,* attorney, and *Jerome F. Treis* of counsel, both of Milwaukee, and oral argument by *Mr. Barry.*

WICKHEM, J.   The question upon this appeal relates to the construction of the fourth paragraph of the will, which reads as follows:

"Fourth: It is my will and I hereby direct that all the rest, residue and remainder of my estate, of which I may die seized or possessed, be it real, personal or mixed, of whatsoever kind or nature be turned over to the person who shall take care of me or nurse me during my last illness.   In the event that I should be married at the time of my death, I give, devise and bequeath all the rest, residue and remainder of my estate to my wife."

Because of certain contentions made with respect to the construction of this clause, it is advisable also to note the contents of the fifth paragraph of the will, which reads as follows:

"Fifth: For reasons known to all, it is my will and I hereby direct that no part of my estate shall go to any of my nieces or nephews."

The contentions of the heirs are, (1) that the fourth paragraph of the will was void for uncertainty; (2) that the evidence did not qualify William Herrmann as the unnamed beneficiary of the fourth paragraph; and (3) that the resi-

due of the estate descended to petitioners as sole heirs at law for the reason that the residuary clause failing, it descends as intestate property.

In the view that the court takes of this case it will only be necessary to consider the second contention. With respect to this it is our conclusion that the evidence does not qualify William Herrmann as the unnamed beneficiary of the fourth paragraph of the will. We consider it unnecessary elaborately to consider here various rules of construction that are not seriously in question. The proper construction of the fourth clause may be more easily made clear if preceded by a fairly detailed statement of the facts and circumstances concerning the testator.

Testator was born in 1878. For some years he acted as bailiff in the civil court. He retired from active service in 1926, because of ill health, having suffered from rheumatism for some years. The will was executed January 22, 1934. William Herrmann, the claimant, fifty-nine years of age, was born at 1615 South Fourth street, Milwaukee, and was a moulder at the Chain Belt Company. He was not related to Ziehlke, but the two had been acquainted since 1893, when they had worked in the same plant. In 1926, Ziehlke rented the rear rooms in Herrmann's house, and from that time until his death lived and kept house there. He was unmarried. The rooms rented by Ziehlke had a separate entrance, and until 1936 were completely separate from the rest of the house. After that date the doorway between Ziehlke's apartment and the balance of the house was left open. After quitting the civil court Ziehlke had no occupation. He was sick for some time in 1932, about two years prior to the execution of the will, and Herrmann's sister, who then lived with him, prepared his meals during that time. Thereafter, he was able to get about although somewhat afflicted with rheumatism and other minor ailments. From April 18, 1936, to October, 1936, he spent his time alone at a lake cottage and

there cared for himself. After his return in the fall he continued as before to prepare his own meals. While at the cottage Ziehlke had fallen and injured his shoulder, and on several occasions Herrmann helped him by applying warm towels to the shoulder. Herrmann also occasionally helped Ziehlke put on his shoes because the latter was bothered with overweight and rheumatism. It is not necessary to go into the details further than to say that Herrmann occasionally performed minor courteous acts to accommodate Ziehlke, who was not in the best of health, but who was up and around in spite of rheumatism and a weight of three hundred sixty-five pounds. It is not contended that Ziehlke, during the period up to December 6, 1936, was in his last illness or that Herrmann nursed or cared for him. On the morning of December 6, 1936, Ziehlke got up and tended to the furnace. Herrmann was still in bed. Ziehlke then went out doors and shoveled snow on the Herrmann premises. A milkman heard the noise of the shoveling when he went to deliver milk at a house, and when he returned to his wagon the noise had ceased, and the milkman found Ziehlke lying upon the ground unconscious. The milkman awakened Herrmann, and while the latter was dressing gave Ziehlke such care as was possible under the circumstances. Herrmann went to a neighbor's and called a doctor. A police ambulance came, and two policemen, Herrmann, and one Redlin, by use of a stretcher, got Ziehlke in the ambulance, and he was taken to the Emergency hospital. Redlin and Herrmann consulted over the telephone as to a doctor and Redlin recommended a Dr. Beebe, who in turn recommended Dr. Wm. O'Malley, whom Redlin then called. Herrmann, a Mr. Kurtz, and a Mr. Knak then went to the Emergency hospital and waited for Dr. O'Malley to come, and Herrmann then told Dr. O'Malley to give Ziehlke all the care that was necessary, and that the latter had money to pay for it. Ziehlke went to the hospital on Sunday and died on

Tuesday. Herrmann called during this time, but testator was unconscious. After the death Herrmann notified the undertaker.

From the foregoing several things are evident. Although he was grossly overweight and suffered from rheumatism and various minor ailments, Ziehlke was never disabled in any real sense up to the Sunday that he was sent to the hospital. He paid his way, cooked his own meals, took care of his apartment, and even cooked for others occasionally. He did chores about the house, and up to the Sunday when the milkman discovered him in an unconscious condition, he could not be said to have begun his last illness, and *a fortiori,* nobody up to that time had taken care of him or nursed him in such illness. After that time the question is whether Herrmann could be said to have taken care of testator or nursed him during his last illness. We think not, for two reasons. In the first place, we think the term "last illness" contemplates a protracted period of illness. Just how long is not necessary to state, but certainly longer than the period involved here, and certainly long enough to give opportunity for much more substantial services and nursing than were required here. What the testator had in mind was evidently that he might die as a result of a lingering illness and that the person who assumed the burden of his care during this period was to have compensation under the fourth clause of his will. The illness which terminated his life was not such an illness as was contemplated by the will, and we think the clause did not apply to any of the activities of any of the persons here involved. Even if it should be construed to apply to such an illness as terminated testator's life, it seems evident to us that Herrmann does not qualify as a beneficiary. It appears to us that he had no more to do with taking care of the deceased in his last illness than did two of the other men. The milkman discovered him and gave him such relief as was practicable in the few moments after discovery, and Herrmann telephoned for the ambulance. The police, Herr-

mann, and another assisted in carrying him to the ambulance, and after that time he was in the professional care of the hospital. We think that this is quite far removed from the service contemplated by the fourth paragraph of the will.

The trial court appears to have been impressed by the fifth clause in which the testator disclosed a positive intention that his nieces and nephews take nothing under his will. The answers to this are, (1) that they do not take under the will, and (2) that this paragraph throws no light upon the meaning of the fourth paragraph as applied to the present situation. If one of the nieces had actually nursed him during his last illness, the fifth clause might be effective to exclude her as a beneficiary under the fourth clause. Here, however, the nieces and nephews do not take under the will but by law. The fourth paragraph being the residuary clause and the gift failing, the residue goes by operation of the law of descent. No doubt this is not what testator intended, but the only way in which he could vary the rules of descent would be by making an effective gift at variance with these. This he did not do.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion.