## Rossman Estate.

Argued October 2, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER J., absent).

*Paul M. Showalter,* with him *Showalter & Showalter,* for Albert Hall et ux., appellants.

*J. Weinman Cratty,* with him *Merrill W. Linn* and *Miller A. Johnson,* for Ralph Dinges, appellant.

*Charles Wolfe Kalp,* for claimant, appellee.

*John A. Beard,* and *Cloyd Steininger,* for claimant, appellee.

*William L. Showers,* for claimants, appellees.

*Kenneth A. Bidlack,* for claimant, appellee.

*Claude Steininger,* for executor, appellee.

OPINION BY HIRT, J., November 14, 1950:

Decedent, Anna S. Rossman, at the time of her death was living in a rented room in the house of Eva Herring in Williamsport. In the early morning of August 1, 1947, she was found unconscious on the bathroom floor of the Herring home. She was removed to a hospital where she died about seven hours later without regaining consciousness. In a holographic will dated March 6, 1946, she, after making a number of specific bequests, disposed of her residuary estate, amounting to something over $10,000 thus: "I give, devise and bequeath to those who are kind to me in my last illness and care for me all I have left without tax". This residuary clause, in paragraph 11 of the will, gives rise to the

controversies in this estate. The auditor appointed by the court awarded the residuary estate in five equal shares to persons who in his judgment qualified by meeting the description of the above provision of the will; the lower court dismissed exceptions to the auditor's report and ordered distribution in accordance therewith. Two appeals before us will be disposed of in this opinion. In one of them Albert B. Hall and Minnie R. Hall, his wife, who together were awarded one share under paragraph 11, contend that they qualify as sole beneficiaries of the entire residuary estate to the exclusion of the other persons who would participate under the court's order. In the second appeal by Ralph E. Dinges it is contended that the testamentary disposition of the residuary estate has failed for want of qualification by any beneficiary, under its terms. Accordingly, Ralph E. Dinges, for himself and his sister Mary Dinges Smith, claims the residuary estate under the intestate law; they are the sole heirs at law of decedent.

Anna S. Rossman was 80 years old when she died. There is little dispute as to her physical condition prior to her death and no difference of opinion as to the cause of death. She died from cerebral hemorrhage. Dr. J. S. Purnell, her family physician, testified that she had a condition designated by him as "hypertensive arteriosclerosis" which had grown progressively worse during the last five or six years of her life. He testified: "I don't know what disease caused her death, but I can say that cerebral hemorrhage is a phase of hypertensive arteriosclerosis disease". Dr. Stuart Gibson, who attended her when stricken, testified that from a prior examination he knew that she had hypertensive arteriosclerosis and that the combination of high blood pressure and existing hardening of the arteries "lead up to the cerebral hemorrhage". There was this difference in the testimony of these two medical experts: Dr.

Purnell considered "hypertensive arteriosclerosis" a disease; Dr. Gibson testified in effect that hardening of the arteries is not a disease but a condition normal to growing old.

The findings of the auditor accepted as a basis for the distribution of the residuary estate by the court may be summarized thus: The stroke suffered by decedent on August 1, 1947, and her moribund condition which persisted thereafter for seven hours, until her death, did not constitute her "last illness" as contemplated by her in her will. The auditor found however that the last illness of Anna S. Rossman was hypertensive arteriosclerosis which was a lingering illness in this instance extending over a period of five or six years and ending in cerebral hemorrhage and death.

The award to the appellants Albert B. Hall and Minnie R. Hall, jointly, of one-fifth of the residuary estate, is based upon the following testimony: the Halls helped the decedent to move from Mifflinburg to the home of Mrs. Herring in Williamsport five months before her death. Arrangements had been made for decedent to live with the Halls in a rented room at some time in the future. This intention was never consummated although the Halls had moved some of her furniture into their home. When decedent was stricken Mrs. Hall came to the Herring home in response to a call. She there put a pillow under decedent's head and covered her with a blanket, and she accompanied Mrs. Rossman to the hospital in the ambulance. She remained with decedent in the hospital until her death and contributed to her comfort, although unconscious, by bathing her eyes and moistening her mouth with mineral oil. On this slender thread hangs the award to the Halls. The awards of the other shares in the residuary estate to named beneficiaries are based on nothing more than similar kindly acts by neighbors and friends over a period of five or six years. Certainly

10

the Halls are not entitled to the whole of the residuary estate, as they contend in their appeal. And in our view, they, along with all of the other beneficiaries under the court's order, are not entitled to any part of the residuary estate. It is our conclusion that, as to the residue, the testatrix died intestate.

The question whether arteriosclerosis, with attending heightened tension is to be regarded a disease has been raised in the technical field of insurance contracts especially those providing for double indemnity for death from accident, independently of all other causes. In such cases if the death of the insured results from accidental injury in actual conjunction with a preexisting and substantial physical infirmity there can be no recovery. This principle was recognized in *Frame v. Prudential Ins. Co.*, 358 Pa. 103, 56 A. 2d 76 where it was contended that a hypertensive heart condition could not be excluded from the accidental injury as the cause of death. On that question Mr. Justice STERN said: "The right to recover on the policy was barred only if there was *in fact* such a contributing factor, not if, as a mere matter of speculation, there might have been. It might be added that there is an important difference between an actual disease and ailments or predispositions common to advancing age, such, for example, as arteriosclerosis in a degree not disproportionate to the age of the insured; this distinction was pointed out by Judge CARDOZO in Silverstein v. Metropolitan Life Insurance Co., 254 N.Y. 81, 171 N.E. 914, and has been approved by this court in Arnstein v. Metropolitan Life Insurance Co., 329 Pa. 158, 162, 163, 196 A. 491, 493; Kelly v. Prudential Insurance Co., 334 Pa. 143, 151, 6 A. 2d 55, 59; and Real Estate Trust Co. of Philadelphia, Trustee, v. Metropolitan Life Insurance Co., 340 Pa. 533, 541, 542, 17 A. 2d 416, 420".

The Frame case, supra, throws light on the present case but it does not control it. Hypertensive arterio-

sclerosis is not necessarily an illness or disease under the law, and in common usage it is not always so regarded as a matter of fact. In the present case therefore, regardless of whether the tension of decedent's hardened arteries was excessive for her age, it is her intention as disclosed by the language of the will, read in the light of the attending circumstances, that controls.

Testatrix disposed of her residuary estate in a single sentence. The language used does not unmistakably reveal her intention and this case falls within the rule of *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338 which requires us to place ourselves in her position and take into consideration her situation in life and the facts and circumstances surrounding her at the time the will was executed. A "will must be considered with a thought to the conditions under which it was written": *Glasgow's Estate, (No. 1),* 243 Pa. 613, 90 A. 332. Under the circumstances it is clear that testatrix did not contemplate sudden death from a catastrophic seizure and certainly the seven hours during which she lived after the cerebral hemorrhage cannot be regarded as her "last illness" in the sense contemplated by her. Cf. *In re Ziehlke's Will,* 230 Wis. 574, 284 N.W. 497. The law governing the making of nuncupative wills has no application here. Moreover, decedent was a lonely woman, seventy-nine years old, when she made her will. What she feared was a lingering illness and she intended to reward those who from kindly motives would "care for" her by doing for her what she could not do for herself during such last illness. It is also clear that testatrix did not regard her hypertensive arteriosclerosis as an illness although she knew of her condition during the last three years of her life. Her condition was never seriously disabling throughout the ten years that she lived in Mifflinburg before going to Williamsport. And during the five months before her

death she was normally active. She visited friends and in the Herring household did her share of the housework including the preparation of meals. During that period of five months she consulted a physician but once and then only for nervousness.

In *Glasgow's Estate,* supra, relied upon by the beneficiaries under the awards, there was a somewhat similar provision in the decedent's will. Under the circumstances in that case the residuary estate was awarded to the claimants, husband and wife, with whom the decedent had lived for years, and who had performed the services contemplated by the testator. The distinguishing feature, which eliminates that case as controlling here, is that the testator, who was 75 years old and had no immediate family, realized when he executed his will that he was very ill. In fact his will was executed after he had been removed to the hospital and only 8 days before his death. The testatrix in the present case lived approximately 17 months after executing her will and, at the time she made it, there is nothing to indicate that she was not in about the same physical condition as she had been for a number of years prior thereto. And she did not consider her then condition an illness, much less her last illness. In a letter written by her to a Mrs. Houser on December 22, 1946, nine months after making her will, she said: *"If* I get sick would have to go to a hospital at once as I have no one to do for me . . . . Oh if I only had a comfortable home and could be with some one who would be *kind* to me in my last days, I would be happy . . . . Oh if I only had a place to go, . . . as I am sad and lonely. I never thought I would have to be in such a plight and be left alone *with no one to care for me."* (Italics added.) These and similar statements in other letters written by her are inconsistent with the appellees' contention that when she made her will she believed that she was in her last illness.

For failure of the qualification of beneficiaries under paragraph 11 of the will, decedent died intestate as to her residuary estate. This conclusion results as a matter of law and it therefore is of no moment that she may or may not have been on cordial terms with her nephew and niece, who are her only heirs.

Order reversed in No. 2, March Term, 1951, and distribution awarded in accordance with this opinion.

The appeal of Albert B. and Minnie R. Hall, in No. 1, March Term, 1951, is dismissed.

Costs in both appeals to be paid by the estate.