WILL OF DOLPH: HENDRICKSON and others, Appellants, vs. WATSON, Respondent.*

*November 8—December 4, 1951.*

* Motion for rehearing denied, with $25 costs, on February 5, 1952.

294

*Alvin Juedes* of Milwaukee, for the appellants.

The cause was submitted for the respondent on the brief of *Lowry & Hunter* of Waukesha.

GEHL, J.   It is the contention of the petitioners that the remainders, subject to the life interests of testator's widow and his two daughters, vested at the testator's death, one third in Edith May Dolph Hill, one third in Cyrus Dolph, and one third in Belle Watson, who is now the only surviving child of the testator.

The judgment of January 7, 1919, in unambiguous terms, assigns the personal property of the deceased to persons specifically named therein.   The time for appeal having expired, it is a final adjudication with respect to the personal property and although erroneous, is not subject to either direct or collateral attack. *Estate of White,* 256 Wis. 467, 41 N. W. (2d) 776,   The court was therefore in error in including in the order of April 3, 1951, the provision that the balance of personal property be assigned to Belle Watson.

The judgment entered on January 7, 1919, assigns the real estate "according to the will of said deceased, in the shares and subject to the rights and life estates, and fees given, in the will of said deceased, to which said reference is hereby expressly made."   The provision is, to say the least, ambiguous and requires construction.

At the time these proceedings were commenced the estate was still before the county court.   Its jurisdiction still extended to "all matters relating to the settlement of" the

estate. Sec. 253.03, Stats. It still had power to construe the terms of the judgment which, as has been pointed out, are ambiguous. Where ambiguity exists the court must resort to such facts and circumstances as are available to remove it and to determine what is meant by its language. For such purpose nothing is more accessible than the terms of the will which express the intent of the testator as to the disposition of his property.

". . . when the language of the judgment is ambiguous and its meaning obscure the sense in which the trial court meant its language to be understood may be ascertained by an examination of evidentiary facts, among which may be the language adopted by the testator and the circumstances surrounding its adoption." *Will of Yates,* 259 Wis. 263, 272, 48 N. W. (2d) 601.

The judgment which purports to assign the real estate recites that it assigns it "according to the will." To ascertain the intent of the court, which must be assumed to be the same as that of the testator, resort must be had to the terms of the will.

Subject to three life estates, the property is assigned "to be divided equally between my then surviving children."

Appellants cite a number of authorities from this and other jurisdictions to the rule that the law favors the early vesting of estates and that it requires that their contention be sustained. Such is the rule generally, but it is displaced where the testator's intention to delay the vesting is indicated in the provisions of his will. They cite *Will of Colman,* 253 Wis. 91, 93, 33 N. W. (2d) 237, in which was involved the construction of the following provision:

"After the death of my said wife, said trust is to be terminated and I give, devise, and bequeath all my estate, both real and personal, in equal portions to my sister Julia L. Osborne and my brothers Harry L. Colman and Edward L. Colman, for their sole use and benefit. And in case of the

death of my said sister or either of my said brothers before the death of my said wife, the share that he or she would have taken shall be divided equally between his or her surviving children, by right of representation."

Three of the children of the sister died after testator but prior to the death of the life tenant. The court held that the children were substituted legatees and took an interest in the estate of the deceased vested at the date of his death. It must be observed, however, that in the *Colman Case* and in others involving similar testamentary language there is not present a direction that the remainder, after the life tenancies, is to be divided between testator's *"then* surviving" children. The word "then" is most significant and indicates quite clearly that testator intended that the remainder should go to those of his children surviving at the death of the surviving life tenant.

The word "then" is an adverb of time modifying the following word "surviving." It can be referred to no other language of the will. It can have no other meaning than that the remainder shall go to the children ascertained as of the death of the surviving life tenant. *Proctor v. Clark,* 154 Mass. 45, 27 N. E. 673. In a note in 49 A. L. R. 187, the author, citing a number of cases in support of his conclusion, says:

". . . where the word 'then' is clearly used as an adverb of time, and not as referring to the event, it will have the effect to postpone the ascertainment of the class until the period to which it has reference."

We consider it a correct statement of the rule to be applied here and, accordingly, hold that Belle Watson, as the sole surviving child of the testator, is the sole owner of the real estate of which he died seized.

*By the Court.*—Judgment modified as indicated in this opinion and, as so modified, affirmed.