WILL OF WEHR: CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY, Executor, Appellant, v. SCHOENDORF, Special Administrator, and others, Respondents.*

*September 7—October 3, 1967.*

---

* Motions for rehearing denied, with costs, on December 5, 1967.

"...

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland* of Milwaukee, and oral argument by *Herbert C. Hirschboeck.*

For the respondents Carl H. Wehr, Jr., Alfred H. Wehr, Richard H. Wehr, and Mary Wehr Bertram there was a brief by *Harrold J. McComas, Edwin F. Walmer,* and *Foley, Sammond & Lardner,* all of Milwaukee, and oral argument by *Mr. McComas.*

For the respondents Virginia Peter Wehr Smith, Frederick A. Bodden, Rila C. Bodden, Marion R. B. Hayes, Fiske Otis Parnkopf, and Jeanette Rotta there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Reuben W. Peterson, Jr.,* and *George N. Kotsonis* of counsel, all of Milwaukee, and oral argument by *Mr. Kotsonis.*

For the respondent Clara Wehr Dietrich Wall there was a brief by *Shea, Hoyt & Greene,* and oral argument by *George A. Evans, Jr.,* all of Milwaukee.

For the respondent Arthur W. Thompson, special administrator, there were briefs by *Michael, Best & Friedrich,* attorneys, and *F. William Haberman* of counsel, all of Milwaukee, and oral argument by *Mr. Haberman.*

For the respondent George W. Hubmann there was a brief and oral argument by *Peter P. Woboril, Jr.,* of Milwaukee.

For the respondent First Wisconsin Trust Company, special administrator, there were briefs by *Bernard V. Brady, John T. Harrington,* and *Samuel J. Recht,* attorneys, and *Brady, Tyrrell, Cotter & Cutler* of counsel, all of Milwaukee.

For the respondent Marshall & Ilsley Bank, special administrator, there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke* of Milwaukee.

CURRIE, C. J.  The trust estate distributable under subparagraph VII (3) (b) of the will of William E. Wehr, deceased, will be referred to as the "Gebhardt remainder."

With the exception of respondent Hubmann, it is the position of all other parties to this appeal that there is a failure of the Gebhardt remainder because of the decease of Clara Gebhardt and her daughters prior to the death of the last life beneficiary, C. Frederic Wehr. Hubmann contends that there was no failure of the trust on two alternative grounds: (1) The remainders of the two Gebhardt daughters who survived the testator were indefeasibly vested; (2) Hubmann qualifies as a "descendant" of Clara Gebhardt, his father having been Clara Gebhardt's brother.

The claims advanced by the parties on the basis that the Gebhardt remainder has failed fall in the following categories:

(a) The four children of Carl Wehr take as distributees of the other residuary remainder. This was the holding of the county court.

(b) The remainder is distributable as intestate property to the estates of the persons who constituted testator's heirs at the time of his death on August 24, 1944.

(c) The remainder is distributable to those persons, or their estates, who were the heirs of testator as of the date of the death of C. Frederic Wehr, the last life beneficiary, on September 28, 1965.

The claim that the Gebhardt remainder passes to the distributees of the other residuary remainder is based on the intent of testator. In partial support of this claim, respondents Carl Wehr, Jr., et al., note that at the time testator executed his will (March 10, 1937), Wisconsin case law held that lapsed residuary gifts should pass to the remaining residuary distributees. They argue that, in failing to provide for a gift over of the trust, testator intended that it should pass pursuant to such law.

The claim that the remainder is distributable to the estates of those persons who constituted testator's heirs at the time of his death is based on the contention that

testator, under his will, retained an undisposed of reversionary interest in the trust which passed by intestacy at his death.

Two theories have been put forth in support of the claim of the persons (or their estates) who constituted testator's heirs at the time of the death of the last life beneficiary. One is that testator's undisposed of interest in the trust was not a reversion, but only a possibility of reverter. It is contended that a possibility of reverter is not an expectant estate within the meaning of the applicable Wisconsin statutes, and, as a result, is not descendible under statutes of descent and distribution.[3] The other theory is that testator's will and the final decree vested in the trustees all legal and equitable title to the trust assets, and that failure of the trust at the time of the death of the last life beneficiary thus brought into existence a resulting trust in favor of the persons who then constituted testator's heirs.

---

[3] In support of this contention Dean Oliver S. Rundell's commentary to ch. 230, Wis. Stats., 27 W. S. A., p. 6, is quoted as follows:

"With future estates and reversions comprehending the entire category of estates in expectancy, and with their being defined as they are, it would appear that possibilities of reverter and rights of entry are not included in that category."

Because the controlling sections of ch. 230 were taken almost bodily from the Michigan revision of 1846, and the latter were drawn largely from the New York Revised Statutes of 1829, the cases of *Nicoll v. New York & E. R. R.* (1854), 12 N. Y. 121, *Upington v. Corrigan* (1896), 151 N. Y. 143, 45 N. E. 359, and *Puffer v. Clark* (1918), 202 Mich. 169, 168 N. W. 471, are cited in support of the above contention. However, *Nichols v. Haehn* (1959), 8 App. Div. 2d 405, 187 N. Y. Supp. 2d 773, which limits the effect of *Upington v. Corrigan, supra,* is not cited. Furthermore, 2 Restatement, Property, p. 606, sec. 164, in applying the rules of intestate succession, does not distinguish between possibilities of reverter and reversionary interests. See Comment *a* thereto. For a case holding that a possibility of reverter is not descendible but passes to the testator's heirs determined as of the date of the failure of a bequest, see *Harvard College v. Jewett* (6th Cir. 1925), 11 Fed. 2d 119.

We deem one of the crucial questions to be whether the Gebhardts took vested or contingent remainders. If their remainder interests were contingent, not only would this demolish Hubmann's claim that he is entitled to take as heir of Rosalia Gebhardt, but it also would negate the contention advanced by other respondent claimants that the interest testator failed to dispose of by his will was a mere possibility of reverter and not a reversion.[4]

In view of the foregoing, we consider the following to be the issues which should be resolved by the court:

(1) Is Hubmann, as the nephew of Clara Gebhardt, her "descendant" within the meaning of subparagraph VII (3) (b) of testator's will?

(2) Did the Gebhardts' interests in the trust constitute vested or contingent remainders?

(3) Was it testator's intent that the distributees of the other residuary remainder should take in the event of the failure of the Gebhardt trust?

(4) Did a resulting trust come into existence upon the death of the last surviving life beneficiary due to the failure of the Gebhardt remainder?

(5) Upon the resolution of the foregoing issues, who is entitled to the distribution of the Gebhardt remainder?

These issues will be resolved in the order in which they are listed above.

---

[4] If the Gebhardts' remainder interests were held to be vested remainders subject to defeasance by a condition subsequent, *i.e.*, failure to survive all of the life beneficiaries, this would also defeat Hubmann's claim to take as the Gebhardt heir. See Simes and Smith, *The Law of Future Interests* (2d ed.), p. 114, sec. 135, and *Fulton v. Fulton* (1917), 179 Iowa 948, 162 N. W. 253. However, this probably would require a determination that testator's interest undisposed of by his will was a possibility of reverter and not a reversion. *Waller v. Waller* (1951), 220 S. C. 212, 66 S. E. 2d 876. But when a testator or grantor creates a contingent remainder with no gift over, the interest which remains in him is a reversion. 3 Restatement, Property, pp. 1264, 1265, sec. 250, Comment *j*.

*Nephew as "Descendant."*

Hubmann's brief emphasizes that William E. Wehr was fifty-three years old on March 10, 1937, the day he executed his will. On that date Mrs. Clara Gebhardt was eighty years old and had as her sole issue four unmarried daughters ranging from fifty-three to sixty years of age. The ages of the four life income beneficiaries at that time ranged from forty-seven to sixty-six years old. The argument is then advanced that on March 10, 1937, testator reasonably anticipated that both he and at least one life income beneficiary would survive Mrs. Gebhardt and all her daughters and that all the daughters would die childless. Hubmann further argues that, since it must be presumed the testator did not intend to die intestate, he intended "descendants" to mean "all those to whom an estate descends, whether it be in a direct or collateral line."

Mr. Wehr's will was prepared by a lawyer. Hubmann may be correct when he argues that "descendant" in its popular sense includes collateral descendants.[5] Had Mr. Wehr drawn up his own will and had he been an uneducated man, respondent's argument might have substance.[6] However, it is common legal knowledge that "descendants" do not include collateral relatives.

"A descendant is 'one who descends, as offspring, however remotely; correlative to ancestor or ascendant.' The term includes the most remote lineal offspring, and is practically synonymous with 'issue' in its primary meaning. . .

". . .

---

[5] See Webster's Third New International Dictionary (1961).

[6] *Will of Dever* (1921), 173 Wis. 208, 212, 180 N. W. 839; *First Wisconsin Trust Co. v. Helmholz* (1929), 198 Wis. 573, 578, 579, 225 N. W. 181; 5 American Law of Property (1952 ed.), pp. 132, 133, sec. 21.3 (g) ; 2 Callaghan, Wisconsin Probate Law (6th ed.), pp. 312, 313, sec. 15.59.

" 'Descendants' does not include collateral relations nor relations in the ascending line nor husband or wife." 4 Page, *Wills* (Bowe-Parker rev.), pp. 451–53, sec. 34.23.

"As used in a will in designating beneficiaries, the term 'descendants' properly includes every person descended from the stock referred to, or all who can trace lineal descent to the remotest degree from the ancestor named, including children, offspring, offspring or posterity in general, progeny, and grandchildren or great-grandchildren. . .

"It does not mean heirs of a person, including ancestors and collaterals, in the absence of very clear indication that the testator so intended. . . ." 95 C. J. S., *Wills*, pp. 964, 965, sec. 660.

There are some state court decisions which have construed "descendant," as used in a particular will or as used in a statute, in the manner argued for by Hubmann.[7] It is true that Wisconsin's statute of descent and distribution, sec. 237.01, refers not to "descendants" but to "lineal descendants." However, this case does not involve the use of a word in an intestacy statute;[8] and there does not appear in the will or the surrounding circumstances any clear evidence that the lawyer draftsman intended to use the word "descendants" in a sense other than its most common legal meaning.[9] The fact that the youngest life income beneficiary was six years younger than the youngest Gebhardt daughter, and that the latter

[7] *E.g., Oakley v. Davey* (1934), 49 Ohio App. 113, 195 N. E. 406; *Smith v. Thom* (1914), 158 Ky. 655, 166 S. W. 182; *Estate of Collins* (1958), 393 Pa. 195, 142 Atl. 2d 178. See also Black's Law Dictionary (4th ed.), pp. 530, 531, which gives alternative definitions of "descendant."

[8] This distinction is emphasized in *Estate of Breese* (1959), 7 Wis. 2d 422, 430, 96 N. W. 2d 712.

[9] *Will of Tousey* (1951), 260 Wis. 150, 152, 153, 50 N. W. 2d 454, held that, where testator employed the word "heirs," the presumption that he used the term in its usual legal meaning "is overcome only by clear evidence in the context of a different intention."

was fifty-three years old and unmarried, does not constitute such clear evidence.

Undoubtedly, the lawyer draftsman intended that no part of his client's estate pass through intestacy. However, such general intention, which hopefully may be attributed in every case to every lawyer who drafts a will, is not enough to warrant a strained construction of the will. The lawyer could easily have used the word "heirs," as he did in Article XI of the will, and the court may assume that he pointedly chose not to in order to effectuate the testator's intent.[10]

We conclude that Hubmann, as the nephew of Clara Gebhardt, was not her "descendant" within the meaning of subparagraph VII (3) (b) of the will.

### Were the Gebhardts' Remainder Interests Vested or Contingent?

Sec. 230.13, Stats., provides:

"Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right, by virtue of it, to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain."

The late Dean Oliver S. Rundell, in his Introductory Commentary to ch. 230, 27 W. S. A., pp. 6, 7, points out the absurdity of this statute, and states that the statute should never have been adopted and should now be repealed. This is because the second and third sentences of the statute are contradictory. Frequently, the contingency of a contingent remainder is the remainderman's surviving another person—usually the life income beneficiary. This is the "uncertain" event of the third sen-

---

[10] See *Will of Smith* (1940), 235 Wis. 66, 75, 292 N. W. 443; *Will of Stark* (1912), 149 Wis. 631, 652, 134 N. W. 389.

tence. Yet, under the wording of the second sentence, if the remaindermen who are to so take are in being at the time of the creation of the precedent estate, their remainder interests are vested.

The assets of the Gebhardt remainder consist entirely of personalty. In 1903, sec. 2037 (now sec. 230.13), Stats., was held applicable only to realty.[11] However, by ch. 287, Laws of 1925, sec. 230.14 was amended to provide:

". . . Limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property . . . ."

Such provision was first construed to apply only to the other provisions of sec. 230.14, Stats., and the limitation on the suspension of the power of alienation.[12] Subsequently this court, in two cases concerned with the disposition of personalty and involving no issue of the suspension of the power of alienation, assumed that the provisions of sec. 230.13 were applicable in determining the character of remainder interests.[13] We think this is now the widely accepted view held by the courts and legal profession of this state.

*Will of Moran*[14] directly faced up to the contradiction found in the second and third sentences of sec. 230.13, Stats. It was there held that the estates were vested within the meaning of that statute only in regard to the limitations upon the right to absolutely suspend the power of alienation.[15] The opinion therein further stated that there was no intention in sec. 2037 (now sec. 230.13) to "deal, either as a rule of evidence or otherwise, with the mean-

---

[11] *Estate of Albiston* (1903), 117 Wis. 272, 276, 94 N. W. 169.

[12] *Will of Schilling* (1931), 205 Wis. 259, 237 N. W. 122.

[13] *Will of Reimers* (1943), 242 Wis. 233, 238, 7 N. W. 2d 857; *Estate of Wadleigh* (1947), 250 Wis. 284, 292, 26 N. W. 2d 667. Neither case refers to the limiting application of *Will of Schilling,* footnote 12, *supra.*

[14] (1903), 118 Wis. 177, 96 N. W. 367.

[15] *Id.* at page 186.

ing of testamentary or contractual words as regards when title is or is not vested. . . ." [16] While the court's holding in *Will of Moran,* that the particular remainders under consideration were contingent and not vested, was subsequently overruled,[17] its interpretation of the limited purpose served by the second sentence of sec. 230.13 has not been.

Perhaps, the most honest approach is taken by a New York decision. Sec. 230.13, Stats., is derived from a New York statute, sec. 40, New York Real Property Law (49 McKinney).[18] Court decisions of the state of New York construing such a statute are persuasive in Wisconsin.[19] In *Estate of Robinson* [20] the court stated:

"The difficulty, or, we may say, impossibility, of applying the provisions of section 40 of the Real Property Law, involving the definite characterization of all future estates as being either vested or contingent, has been the subject of extensive observation. . . . Section 40 of the Real Property Law enunciates such inconsistent definitions, at the same time, completely ignoring future interests vested only contingently (otherwise frequently denominated as 'vested subject to being divested') that it has, quite deservedly, come to be regarded as only an abortive attempt by the Legislature to cut the Gordian knot in relation to vestiture of future interests. *In cases like the instant proceeding, the only applicable law is case law.*" (Emphasis supplied.) [21]

We conclude that sec. 230.13, Stats., is of no assistance to the court in resolving the issue as to whether the Gebhardt remainder interests constituted contingent remainders. Therefore, we turn to the Restatement and to Wisconsin case law.

---

[16] *Id.*

[17] *Will of Reimers,* footnote 13, *supra,* at page 240.

[18] *Patton v. Ludington* (1899), 103 Wis. 629, 642, 643, 79 N. W. 1073.

[19] *Janura v. Fencl* (1952), 261 Wis. 179, 185, 186, 52 N. W. 2d 144.

[20] (1946), 187 Misc. 489, 62 N. Y. Supp. 2d 373.

[21] *Id.* at pages 492, 493.

2 Restatement, Property, p. 541, sec. 157, classifies remainders as follows:

"A remainder can be
 "(a)    indefeasibly vested; or
 "(b)    vested subject to open; or
 "(c)    vested subject to complete defeasance; or
 "(d)    subject to a condition precedent." [22]

Thus, the Restatement has abandoned the term "contingent remainder" in favor of the term "remainder subject to a condition precedent." [23] Simes and Smith state that if there is a condition precedent of survivorship, the remainder in question is contingent.[24]

We deem the controlling Wisconsin case, requiring us to hold that the Gebhardt remainders were subject to the condition precedent that the Gebhardts survive all of the life beneficiaries, to be *Will of Dolph.*[25] There the testator gave life estates in the remainder to his widow and then to his daughters and then directed, " 'After the death or marriage of my wife Harriet Dolph and Nellie and Ivy Dolph I will and direct that my said estate be divided equally among my *then* surviving children.' " (Emphasis supplied.) The opinion held that the key word was "then" and stated:

"The word 'then' is an adverb of time modifying the following word 'surviving.' It can be referred to no other language of the will. It can have no other meaning than that the remainder shall go to the children ascertained as of the death of the surviving life tenant. . . ." [26]

[22] In 1965 New York repealed sec. 40, Real Property Law (the statute which was the counterpart of sec. 230.13, Wis. Stats.), and adopted this section of the Restatement classifying remainders. Ch. 204, secs. 5, 2, Laws of New York, 1965.

[23] See Simes and Smith, footnote 4, *supra*, at page 112, sec. 133.

[24] *Id.* at page 115, sec. 135.

[25] (1951), 260 Wis. 291, 50 N. W. 2d 448.

[26] *Id.* at page 297. The court cited as supporting authority, *Proctor v. Clark* (1891), 154 Mass. 45, 27 N. E. 673, and a note in 49 A. L. R. 187.

Here the remainder bequests are to Mrs. Gebhardt "if she be then living; and if she be dead, then, in equal shares to her then surviving descendants." Under our holding in *Dolph,* surviving the life beneficiaries was a condition precedent to any of the Gebhardts taking. Thus their interests were contingent remainders.

### Testator's Intent.

The county court's determination that the Gebhardt remainder is to be distributed to the distributees of the other residuary remainder is grounded on the theory that such result is required in order to carry out testator's intent. Much reliance was placed by the county court upon the Ohio case of *Bank v. Browning* [27] which adopted the rule that, if a bequest or devise of part of the residue lapses or is otherwise ineffective, such part of the residue will ordinarily pass under the other residuary provisions of the will rather than as intestate property. The court's rationale is found in Mr. Justice TAFT's statement in the majority opinion that:

". . . To say that the testator did not intend to so dispose of the whole of the residue is to disregard what the testator has said in his will, and results in taking part of the residue from those to whom he said it should go and giving it to others to whom he did not say that it should go." [28]

The orthodox and prevailing rule is that a lapsed portion of the residue passes as intestate property and not to the surviving residuary legatees or devisees.[29] A review of the Wisconsin cases reveals that, while three

[27] (1952), 158 Ohio State 54, 107 N. E. 2d 120.

[28] *Id.* at pages 63, 64.

[29] 3 American Law of Property (1952 ed.), pp. 626, 627, sec. 14.14; *Bank v. Browning, supra,* footnote 27. *See also* 95 C. J. S., *Wills,* p. 839, sec. 615 (c); 57 Am. Jur., *Wills,* p. 977, sec. 1453; and Annots., at 28 A. L. R. 1237, 139 A. L. R. 868, 36 A. L. R. 2d 1116.

earlier cases embraced the minority view that a lapsed residuary bequest is distributable to the distributees of the other portions of the residue, the later and controlling cases have rejected this result, and have embraced the majority rule.

The three earlier cases which would support the county court's determination are *Will of Reynolds*,[30] *Will of Waterbury*,[31] and *Will of Nielsen*.[32]

In *Will of Reynolds* the residue of the estate was bequeathed in trust, and testator's widow was to receive distribution of 30 percent thereof. Since the widow had renounced this bequest by electing to take under the law, the issue was the disposition to be made of her residuary bequest. The court held that it passed to the other residuary legatees and stated:

". . . We are persuaded that he [the testator] intended that the whole of the residuum of his estate should go to the residuary legatees, and that no part thereof should under any circumstances become intestate property. . . ."[33]

The court held that, reading the will in the light of the surrounding circumstances, it was convinced that testator intended to confine the distribution of the residue to the legatees named in the residuary clause. No express language in the will was pointed out that would indicate such intent.

The testator in *Will of Nielsen* was survived by 10 brothers and sisters. Testimony taken disclosed that testator had had no close relationship with any of them except his brothers Claus and Henry, and that testator had been particularly close to Henry and the latter's wife and son. The will, after bequeathing $1,000 to Claus, provided as follows:

[30] (1912), 151 Wis. 375, 138 N. W. 1019.
[31] (1916), 163 Wis. 510, 158 N. W. 340.
[32] (1950), 256 Wis. 521, 41 N. W. 2d 369.
[33] *Will of Reynolds, supra,* footnote 30, at page 384.

" 'The rest, residue, and remainder of my estate, whether real or personal and wheresoever situate, I give, bequeath, and devise to my brother Henry Nielsen, Helga Nielsen, his wife, and Vernon Nielsen, their son, in equal parts, being a one-third part thereof to each.' " [34]

Helga predeceased testator. Considerable testimony, including that of the scrivener, was taken with respect to the intention of testator. The court held Helga's share passed to the other two residuary legatees and stated:

". . . In solving the problem, the extrinsic facts and circumstances surrounding the testator at the time of drafting his will must be considered in determining his intention. In view of those facts and circumstances, it is obvious that he intended that Claus should receive only $1,000; that all of the rest of testator's property should pass to those named in the residuary clause; and that no part of his estate should go to the testator's other brothers and sisters. . . ." [35]

It is impossible to reconcile the holdings in *Reynolds, Waterbury* and *Nielsen,* with the determination made in the later case of *Will of Rosnow.*[36] There, testator was survived by his sons Arthur and Leonard and two grandchildren, Norman and Naomi, children of a deceased son. The will contained clauses stating that it was testator's will that the son, Leonard, and the granddaughter, Naomi, should share "in no part of this my estate." The residue of the estate was bequeathed one half to the son Arthur and one half to a sister Meta, who predeceased testator without issue. The court held that Meta's residuary bequest passed as intestate property to testator's heirs, in spite of the express language of the will that two of those heirs should not share in the estate. In reaching this conclusion, the court gave consideration to *Will of Nielsen* in which extrinsic evidence was relied on to support a determination that testator's brothers

---

[34] *Will of Nielsen, supra,* footnote 32, at page 523.

[35] *Id.* at page 528.

[36] (1956), 273 Wis. 438, 78 N. W. 2d 750.

and sisters not named in the residuary clause should not take. The court stated:

". . . The extrinsic considerations in *Will of Nielsen, supra,* seem now to be much less persuasive to the result then reached than they did when the case was determined. . . ." [37]

The court in *Rosnow* also quoted with approval from its prior opinion in *Will of Ziehlke.*[38] Testator in the latter case inserted a provision in his will that no part of his estate should go to his nephews and nieces. The residuary clause bequeathed the residue of the estate to the person who should care for testator during his last illness, but no person met this requirement. The court held that the lapsed residuary bequest was distributable to the nephews and nieces as the testator's heirs, even though the will had expressly provided that they were not to take. In considering the effect of such provision, the court commented:

". . . Here, however, the nieces and nephews do not take under the will but by law. The fourth paragraph being the residuary clause and the gift failing, the residue goes by operation of the law of descent. No doubt this is not what testator intended, but the only way in which he could vary the rules of descent would be by making an effective gift at variance with these. This he did not do." [39]

*Will of Rosnow* was followed by *Estate of Mory.*[40] This case was decided last year and leaves no doubt that the earlier holdings in *Reynolds, Waterbury,* and *Nielsen* have now been repudiated. Unlike *Rosnow, Mory* does cite these three earlier cases. In *Mory,* testatrix was one

[37] *Id.* at page 441.

[38] (1939), 230 Wis. 574, 284 N. W. 497.

[39] *Id.* at page 579. However, since *Ziehlke* involved a failure of the entire residuary bequest and not merely a portion thereof, we do not consider it to have been controlling in *Rosnow* nor to be controlling in the instant case.

[40] (1966), 29 Wis. 2d 557, 139 N. W. 2d 623.

of 11 children, seven, including testatrix, having the same mother and father, and the other four having the same father but another mother. All of testatrix's siblings predeceased her. By the residuary clause the residue of her estate was bequeathed to three sisters and a brother. Only one of the four residuary legatees was survived by issue, so three quarters of the residue lapsed. It was held that the lapsed portion passed as intestate property to the next of kin rather than to the remaining residuary legatees. *Mory* held that, in establishing the intent of the testator, the court looks to the will itself, and not to extrinsic circumstances as was done in *Will of Nielsen.*

*Mory* also makes clear that the intent of a testator not to die intestate, manifested by his insertion of a residuary clause in the will, is not sufficient to effect a gift over of a lapsed portion of a residuary bequest to the other residuary legatees.

The county court in the instant case stressed the provision of Article XI of the will in which testator stated that he had other heirs besides those named life beneficiaries but that he did not consider it necessary to provide for them. This court would have to resort to inference to even equate this provision with the positive prohibition expressed in *Rosnow* that such heirs were not to take under any circumstances. Even if so interpreted, *Rosnow* would not permit such prohibition to be the basis for finding a gift over in favor of the distributees of the other residuary remainder.

Lastly, we consider the argument that the testator, and his lawyer draftsman, intended such a gift over but did not provide therefor in the will in reliance upon Wisconsin's case law as it stood in 1937 when the will was drafted. Such case law was then embodied in the previously considered cases of *Will of Reynolds* and *Will of Waterbury.*

In *Estate of Breese* [41] the court stated the general rule of will construction so often reiterated by our court:

"In construing a will the purpose of the court is to ascertain the intent of the testator as it is expressed in the full and complete will read in the light of the circumstances surrounding the testator at the time the will was executed. . . ." [42]

Among the proper circumstances to be considered in construing a will is the status of the law, both statutory and case law, at the time the will was drafted. [43]

However, before these rules of construction may be invoked, there must be language in the will which requires construction. This is why this court held in *Estate of Mory* that a court must look to the will itself to find an intent of a gift over in favor of the other residuary legatees. Once such language is found, it then might be proper to resort to extrinsic surrounding circumstances for the purposes of construction. There is no language in William E. Wehr's will which this court can construe to ascertain testator's intent as to the disposition of the Gebhardt remainder in the event that it lapsed.

Furthermore, we doubt the likelihood that the lawyer draftsman of the will intentionally omitted provision for a gift over in reliance on then existing case law that would impose a gift over in favor of the beneficiaries of the other residuary remainder. Rather, we think any competent attorney drafting such a will would have exercised the precaution of expressly stating the intended gift over.

It is our considered conclusion that a gift over in favor of the distributees of the other residuary remainder

---

[41] *Supra*, footnote 8.

[42] *Id.* at pages 425, 426.

[43] *Will of Adler* (1966), 30 Wis. 2d 250, 256, 140 N. W. 2d 219, and *Estate of McDonald* (1963), 20 Wis. 2d 63, 67, 121 N. W. 2d 245; 96 A. L. R. 2d 634.

cannot be based on an intent of the testator, when such intent cannot be grounded on any express language employed in the will.

### Resulting Trust.

Some of the respondents, who contend the Gebhardt trust is distributable to the heirs of deceased determined as of the death of the last surviving life beneficiary, ground such contention upon the theory of resulting trust.[44] It is their position that all the legal and equitable title possessed by testator was transferred either by the will or final decree to the trustees, and, when the last life beneficiary died, such title continued in the trustees even though the Gebhardt trust had failed. In such a situation equity would invoke a resulting trust in favor of the heirs of the testator determined as of that time.

The final decree, which assigned the assets of the residuary trusts to the trustees, was entered February 27, 1948. The only reference to the disposition of the Gebhardt remainder in the final decree provided, ". . . with remainder to others,—all as in said will provided. . . ." When a final decree assigns the estate in accordance with the terms of the will, as was the case here, resort must be had to the will to construe such decree.[45] Thus, the extent of the title of the trustees is determined by the wording of the will.

Testator's reversion in the subparagraph VII (3) (b) constituted trust assets of a legal rather than an equitable interest. Because of sec. 231.18, Stats., the trustees never gained title to such reversion. This statute provides:

[44] Cases which support this result are *Estate of Mooney* (1936), 131 Neb. 52, 267 N. W. 196, and *Dennis v. Omaha Nat. Bank* (1951), 153 Neb. 865, 46 N. W. 2d 606. However, the authorities are divided as to whether the heirs of testator who take are determined as of time of termination of the express trust or as of date of testator's death. Annot., 27 A. L. R. 2d 691.

[45] *Estate of Horkan* (1956), 273 Wis. 442, 446, 78 N. W. 2d 767; *Will of Greiling* (1953), 264 Wis. 146, 149, 59 N. W. 2d 241; *Will of Dolph, supra,* footnote 25, at page 296.

"Whenever an express trust is created every estate and interest not embraced in the trust and not otherwise disposed of shall remain in or revert to the person creating the trust or his heirs as a legal estate."

Since the reversion constituted a legal estate, there is no necessity of resorting to equity to impose a resulting trust upon the trustees.

Sec. 231.18, Stats., was derived from a New York statute.[46] A New York case, *Clark v. Cammann*,[47] demonstrates why equity's aid need not be sought. In that case there was a testamentary trust with two life estates and a remainder to the children of one of the life beneficiaries. Such children survived the testator but predeceased the last life income beneficiary. The issue was whether the remainders should be regarded as having lapsed at the death of the testator or at the death of the last life income beneficiary. The court stated:

"As we have seen, the interest of the children of Mrs. Gillespie was contingent upon their surviving their mother. Even then there was no direct gift to them, but a right to receive a portion of the $10,000 contingent on their living at the time when the life estate of their mother came to an end. The only thing which the testator disposed of by his will was this contingent right. He gave to his executors and trustees the title to this property for the purpose of executing the trusts created by the will. They took by that devise, just so great an estate as was necessary to enable them to execute these trusts. That estate was for the life of Mrs. Clark and Mrs. Gillespie. How far it extended after the falling in of those two lives, depended upon the existence of the

---

[46] *Patton v. Ludington, supra,* footnote 18, at pages 642–644. Sec. 102, New York Real Property Law (49 McKinney's) provided: "Where an express trust is created, every legal estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to, the person creating the trust or his heirs." It has been reenacted as sec. 7–1.7, New York Estates, Powers and Trusts Law (17B. McKinney's) without substantive change.

[47] (1897), 14 App. Div. 127, 43 N. Y. Supp. 575.

contingency upon which alone the money was payable to the children. If, for any reason, that contingency should fail, the estate of the trustees failed with it. There was left, therefore, at the time of the death of the testator, a residue of the estate which would commence in possession on the termination of the life estates, in case the contingencies did not take effect. This was a reversionary interest in personal property which is recognized by the statutes of the State in regard to personal property as well as real property. (1 R. S. 773, sec. 2; *Id.* 723, sec. 12.) That reversionary interest came into existence when the will took effect, just as much as did the contingent interest of these children, or the estate of the trustees. When it took effect it vested in those persons who were then entitled to share in the testator's estate under the Statute of Distributions, and while it could not vest in them in possession until the contingent interest of the children had failed, they did not lose it by reason of the delay, but it ran along, side by side, with the possible estate to the children, to take effect or to be destroyed, as the contingent estate of the children failed or became vested." [48]

The New York courts have adhered to this reasoning, which obviates any need for a resulting trust.[49] As stated in Bogert:

"If a settlor who is the owner of a fee or absolute interest conveys to the trustee a lesser interest, he has a reversion, and there is no problem in resulting trust law when the lesser interest expires." [50]

The beneficiary has no strict need of equity to protect his interests, since he has a legal interest. However, since often his interest will require a will construction or a final decree construction by a court of probate jurisdiction pursuant to sec. 253.10, Stats., such court will take full jurisdiction and, if need be, compel the

---

[48] *Id.* at pages 132, 133.

[49] *Will of Astor* (1957), 5 Misc. 2d 722, 162 N. Y. Supp. 2d 46; *Will of Kirkpatrick* (1963), 39 Misc. 2d 133, 240 N. Y. Supp. 2d 342.

[50] Bogert, Trusts and Trustees (2d ed.), p. 686, sec. 469.

trustee to transfer the property to the owner of the reversion.[51]

The basis for a resulting trust is to avoid the unjust enrichment of the persons holding legal title to property being permitted to retain same.[52] For the reasons stated we determine that there is no necessity to resort to this device.

### *Persons Entitled to Distribution.*

We have determined that the Gebhardts were bequeathed contingent remainders and that no gift over to the distributees of the other residuary remainder may be implied. It necessarily follows that testator's reversion, which is entirely personalty, must be distributed under the Wisconsin statutes of descent and distribution to the estates of testator's heirs, such heirs to be determined as of the date of his death. Thus, the distribution of the Gebhardt remainder is to be made to the estates of Gretchen Wehr Falk, C. Frederic Wehr, Edward R. Wehr, and Henry W. Wehr.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

---

[51] *Estate of Wilkins* (1927), 192 Wis. 111, 118, 119, 211 N. W. 652; *Estate of Mayer* (1965), 26 Wis. 2d 671, 682, 133 N. W. 2d 322.

[52] 4 Scott, Trusts (2d ed.), p. 3127, sec. 411; 54 Am. Jur., *Trusts*, p. 152, sec. 193; Bogert, Trusts and Trustees (2d ed.), p. 678, sec. 468.