ESTATE OF FARBER: STAABEN, Appellant, v. JABS, Respondent.

*No. 39.   Argued January 29, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 478.)

For the appellant Ida Mae Staaben there was a brief by *Donald E. Koehn*, attorney, and *Robert C. Rutgers* of counsel, both of Sheboygan Falls, and oral argument by *Mr. Koehn.*

For the respondent there was a brief by *Love, Mc-Graw, Brown & Nettesheim* and *Robert T. McGraw*, all of Waukesha, and oral argument by *Neal P. Nettesheim.*

CONNOR T. HANSEN, J. The issue presented to the court in this case relates to the use of the language of disinheritance or negative words of exclusion in the last will and testament of the testatrix.

The will contained no residuary clause. *Gallagher v. McKeague* (1905), 125 Wis. 116, 119, 103 N. W. 233. Therefore, we are not here concerned with the lapse of a residuary clause in a will.[2]

The gifts of one half of the estate to Mary and one half to Ida Mae and Erna, in equal shares, were not gifts to a class. *Estate of Mory* (1966), 29 Wis. 2d 557, 559, 139 N. W. 2d 623; *Will of Johnson* (1929), 199 Wis. 154, 225 N. W. 818.[3]

Also, the provisions of the anti-lapse statute [4] are not applicable to the facts presented in this case. Mary

---

[2] *Will of Wehr* (1967), 36 Wis. 2d 154, 152 N. W. 2d 868.

[3] *Estate of Schefe* (1952), 261 Wis. 113, 52 N. W. 2d 375. For cases wherein the beneficiaries were not named and the gift was considered to be one to a class, *see: Will of Walker* (1962), 17 Wis. 2d 181, 116 N. W. 2d 106; *Estate of Evans* (1957), 274 Wis. 459, 80 N. W. 2d 408, 81 N. W. 2d 489; *Estate of Phillips* (1940), 236 Wis. 268, 294 N. W. 824, 296 N. W. 608.

[4] Sec. 238.13, Stats. 1967.

Farber and Erna Waters both predeceased the testatrix without issue. *Estate of Mangel* (1971), 51 Wis. 2d 55, 58, 186 N. W. 2d 276.

It is undisputed that it was the intent of the testatrix that her estate be given to her relatives of the whole blood and that none of it be given to her brothers and sisters of the half blood. The will provides in part:

". . . [I]t being my intention that all my estate shall be inherited by those above named, kindred of the whole blood, and that none shall go to my brothers and sisters of the half blood . . . ."

The will contains definite negative words of exclusion and disinheritance. However, more important, is the positive language of the will expressing the intention of the testatrix as to who should inherit her estate, ". . . all my estate shall be inherited by . . . kindred of the whole blood, . . ." At the time of the death of the testatrix, the appellant was the only living person who thus qualified as a beneficiary.

The trial court applied the rule of disinheritance as enunciated in *Will of Ziehlke* (1939), 230 Wis. 574, 284 N. W. 497, and *Will of Rosnow* (1956), 273 Wis. 438, 78 N. W. 2d 750, in its most literal sense when deciding the instant case. In thus applying the rule of disinheritance, the trial court determined the gifts to Mary Farber and Erna Waters, who predeceased the testatrix without issue, lapsed and passed as intestate property to all of the heirs of the testatrix.

We are of the opinion that, under the facts of this case, such a strict application of the rule of disinheritance produces too harsh a result. It is patent in this case that the testatrix intended total exclusion of relatives of the half blood and that her estate should pass to relatives of the whole blood. The literal application of the rule of disinheritance serves to defeat the intention of the testa-

trix. In most cases, however, the application of the rule reaches a justifiable result.

The rule is of common-law origin [5] and is followed by a great majority of courts,[6] including Wisconsin.[7]

In *Pickering v. Lord Stamford, supra,* the English case generally cited as authority for the rule, three reasons were given to justify the rule: (1) One next of kin has no right to read the will against another next of kin; (2) the words of disinheritance did not necessarily imply favoritism toward other kin as it was apparent that the testator's intention was to protect the gift which he unsuccessfully attempted to make; and (3) once an intestacy occurs, the statute of distributions controls the disposal of the intestate portion and the testator's intention is of no consequence as affecting that disposition.

As in this instance, most litigation arising out of the use of language of disinheritance in a testamentary document, is the result of inartistic draftsmanship. However, we here modify the rule of disinheritance as recognized in *Will of Ziehlke, supra,* and *Will of Rosnow, supra,* to the following extent. In those cases where the intent to completely disinherit a certain heir or group of heirs is expressed beyond doubt, as evidenced by positive language stating which heirs are to take, and if any such heirs remain to take, the clearly expressed intention of the testator shall be recognized. Any other rule would serve to defeat the obvious intentions of the testator and thus violate the basic constructional doctrine of wills that the intent of the testator is paramount and must be given effect whenever possible. However, we would emphasize that words of disinheritance or negative exclusion alone are not sufficient to prevent an heir at law from taking intestate property. The rule of negative

---

[5] *Pickering v. Lord Stamford* (1797), 3 Ves. 332, 30 Eng. Rep. 1121.

[6] 4 Page, *Wills* (Bowe-Parker rev. 1961), p. 115, sec. 30.17.

[7] *Will of Ziehlke, supra; Will of Rosnow, supra.*

disinheritance is based upon the proposition that effective parts of a will are only those which make a disposition by describing a gift in positive terms. Thus, it follows that the positive provisions of the will having been fulfilled, the will can then be put aside and the remaining property distributed according to the laws of intestacy. However, viewed realistically, each case should be decided, not on the basis of arbitrary rules alone, but also with due consideration to the positive expression of the testator. The will in this case leaves no doubt that the testatrix intended that her estate pass to her "kindred of the whole blood," and not to her relation by the half blood.

No construction should be adopted that would leave property undisposed of if one can reasonably be read from the instrument which would avoid that result. *Benner v. Mauer* (1907), 133 Wis. 325, 334, 113 N. W. 663. A testator is presumed to have intended to complete distribution of his estate, and a construction tending to that end is to be preferred to one which results in intestacy as to any part. *Estate of Ferdinand* (1959), 7 Wis. 2d 577, 584, 97 N. W. 2d 414; *Will of Nielsen* (1950), 256 Wis. 521, 527, 41 N. W. 2d 369. This court in *Will of Waterbury* (1916), 163 Wis. 510, 514, 158 N. W. 340, stated:

"Rules of construction are not to be applied in ascertaining the true meaning of a will if that meaning can be ascertained clearly from the will itself and the surrounding circumstances. *Donges's Estate,* 103 Wis. 497, 79 N. W. 786. As was said by this court in *Will of Ehlers,* 155 Wis. 46, 47, 48, 143 N. W. 1050:

" 'Much difficulty is liable to occur in initial trials involving the construction of wills by taking some particular adjudications respecting some other wills as controlling, instead of looking to legal principles for guidance, or from following some well known rule for judicial construction as if it were applicable universally, instead of appreciating that, in general, such rules are

to be used in choosing between reasonable meanings of substantial equal dignity and keeping prominently in mind that paramount to all others is the rule that the intention of the testator should prevail so far as it can be read out of the language used to express it.' "

A will is not a phrase or group of phrases, but must be considered as an entire instrument and read as such. *Estate of Cordes* (1957), 1 Wis. 2d 1, 10, 82 N. W. 2d 920. The various provisions should be construed so as to be consistent with one another rather than conflicting. Also, in *Estate of Cordes, supra,* page 11, it was stated:

". . . However, it is to be presumed that he intended a complete distribution of his estate, and a construction tending to that end will be preferred to one which results in intestacy as to any part." (Citing *Estate of Donges* (1899), 103 Wis. 497, 501, 79 N. W. 786.)

In *Lawrence v. Barber* (1903), 116 Wis. 294, 308, 93 N. W. 30, it was stated:

". . . As this court has declared, however, precedents are of very slight utility in construing wills, for the reason that trifling differences of circumstances, verbiage, or context may wholly change their significance, give a different color to the instrument, and necessitate an entirely different conclusion as to testator's intent. . . ."

We reach the conclusion that the will of Ella Farber clearly speaks of her intention that her relatives of the whole blood take her estate to the exclusion of her relatives of the half blood. Since the appellant is her only surviving relative of the whole blood, it follows that she takes the estate of the decedent.

The judgment of the trial court is therefore reversed and the cause remanded, with instructions to enter a judgment construing the last will and testament of Ella Farber in a manner consistent with this opinion.

*By the Court.*—Judgment reversed.